## MILLER v PROCTOR & STURGEON et

Ohio Appeals, 2nd Dist, Clark Co

No 301.   Decided Jan 15, 1932

E. H. Kerr, Tippecanoe City, and R. A. Kerr, Troy, for plaintiff in error.

Horace W. Stafford, Springfield, and Collins & Collins, Springfield, for Proctor and Sturgeon.

BY THE COURT

Various errors are assigned in the petition in error and urged by counsel for plaintiff in error, in their brief. In view of the conclusion at which we have arrived it will be unnecessary to discuss some of the alleged grounds of error urged by counsel for plaintiff in error.

The petition of plaintiff does not allege that any damage resulted to them by reason of the purchase by Benjamin Miller of the 31 hogs claimed to have been included

in their mortgage. The petition merely seeks to recover upon the grounds of conversion. There is no averment in the petition that the plaintiffs have been damaged by reason of such conversion. If they have not been damaged by reason of a portion of the property having been purchased by Benjamin Miller, and assuming for the present that the property so purchased by Benjamin Miller was included in the mortgage of plaintiff, then the case resolves itself into an action merely for wrongful conversion without any special injury or damage being found by reason of such conversion. If that is the status of the case, then the question for determination relates to the measure of the damage sustained.

Benjamin Miller, the purchaser of the property in question, did not owe the plaintiff. It was George W. Miller who gave the note and mortgage in question, and he is not being sued.

From an examination of the authorities cited by counsel and from an independent examination of the question, we cannot escape the conclusion but that under the facts in this case the recovery of the plaintiff below, if entitled to recover at all, would be limited to nominal damages.

This is not a case wherein a portion of the mortgaged property was sold and there was not sufficient property left to pay the mortgage debt. The case therefore does not fall within the reasoning of many of the cases cited.

The rule as to the measure of damages, when the action is one for conversion or in trover, is aptly stated by Judge Cooley in a case reported in 25 Michigan Reports, page 79, as follows:

"There is nothing upon this record to show precisely what rule of damages was adopted by the Circuit Judge, and while we do not feel called upon in this case to say that there is any inflexible rule applicable to all cases of wrongful conversion, we think that where there are no special circumstances which require a different measure of damages to be applied, it is proper to award to the plaintiff the value of the property at the time of conversion with interest from that time."

As above stated, the rule as to the measure of damages is not inflexible and is to be governed by the special circumstances disclosed by the record.

We are of opinion that under the circumstances disclosed by this record the plaintiff would be entitled to recover only nominal damages.

The rule is further stated in the case of **Howard v Cunnison**, reported in the **12th Ohio Dec., at page 637**, as follows:

"One defect in the petition is that there is no allegation of damages, but only a prayer for damages. This, however, is not a fatal defect, only it is an old rule that the plaintiff cannot recover greater damages than he has alleged in the declaration. Tyler Stevens on Pleadings, 371. There being no allegation of damages only nominal damages can be recovered."

The undisputed facts are that plaintiff and the bank had chattel mortgages on various personal property belonging to George W. Miller and that insofar as the record shows Benjamin Miller owed neither of these parties. There is no dispute as to the amount due plaintiff and the bank from George W. Miller. There is no dispute as to their priorities. None of the property covered by the mortgages was ever taken into the possession of either plaintiff or the bank.

The undisputed competent testimony, if admitted, would show that the Sheriff now has in his hands for distribution more money than is necessary to pay the mortgage claim of the plaintiff and the mortgage claim of the defendant bank, and that this money arose from the sale of the property described in the mortgages of the plaintiff and the defendant bank respectively and was the property of George W. Miller, the debtor.

The petition does state a case for at least nominal damages however and therefore the lower court was justified in overruling the demurrer to the petition of plaintiff and to the cross petition of the bank.

T. B. Boitnott was made a party defendant over the objection of Benjamin Miller.

As to the 31 hogs in question, which constitute the cause of action of plaintiff, it is admitted that the Sheriff did not levy upon these 31 hogs, so that Boitnott has no lien by levy or otherwise upon these hogs. Boitnott was therefore not a necessary party, although we do not see how his being made a party prejudiced plaintiff in error.

Many of the authorities cited by counsel in our opinion, are not applicable. Assuming for the purpose of this case, that §8404 GC does not apply, nevertheless many of the cases cited, such as those relating to a situation where there are insufficient funds to pay the different mortgages, that is, where two or more creditors each have a

lien on the same property, have no application, as Boitnott had no lien whatever upon these 31 hogs and the return of the Sheriff shows that he received from the sale of the other mortgaged property $1349.86, much more than enough to pay both mortgage claims.

Various objections were made by counsel for plaintiff in error to the rejection of evidence. For example, on pages 6 and 7 of the record, Mr. Proctor was asked the following questions:

"Q. You clerked the sale (Referring to the Sheriff's sale of the mortgaged property in question)?

A. Yes.

Q. You remember it amounted to over $1300?

A. Some place around there. The papers were all turned over to the sheriff.

Q. Didn't it amount to $1314.90?

A. If that is the record.

Q. You know it amounted to more than enough to pay you and the bank both?"

Question objected to; objection overruled; exception noted.

The record does not show an answer to this question.

"Q. You did refuse to take the money when it was offered to you?"

Question objected to; objection sustained; exception noted by defendant.

"Q. You never took any of this property into your possession at all? A. No, sir.

Q. You never talked to Mr. Benjamin Miller anything about this matter before you brought suit? A. No, sir."

We think the above question to which objection was sustained, viz: "You did refuse to take the money when it was offered to you?" was proper and should have been answered.

Suppose George W. Miller on the morning of this trial had gone to Proctor and Sturgeon and offered to pay his note, could they have refused to accept payment of the note?

George W. Miller had the right to pay this note and secure its cancellation on the day of the trial and if the money which resulted from the sale of his property was in the hands of an officer of the court ready to be turned over to plaintiff and the plaintiff refused to accept the same, how can he be heard to complain about what may have occurred to certain other property included in the mortgage and not necessary for the payment of his obligation?

Counsel for plaintiff in error also seriously insist that the record does not disclose that the 31 hogs sold by George W. Miller to Benjamin Miller and which form the basis of this cause of action were ever included in the mortgage of plaintiff. The court charged the jury and properly so, that the burden of proof was upon the plaintiff to show that these 31 particular hogs were included in plaintiff's mortgage.

We fully recognize the fact that the credibility of the witnesses is a question for the jury. That however, is not the question for determination. Was there evidence to support the verdict? The duty still devolves upon a reviewing court to determine whether or not a verdict is against the manifest weight of the evidence.

The undisputed testimony shows that Benjamin Miller is a dealer in livestock buying and selling same; that during the past fourteen or fifteen years he purchased hogs from George W. Miller; that the hogs in question, 31 in number, weighed about 220 to 225 pounds each; that he paid $7.85 per hundred for the hogs, which was the market price at the time; that he paid to George W. Miller for said hogs $532.23 in two checks, one check for $80 was paid the day before he took the hogs away to enable George W. Miller to pay an obligation which he owed at the Christiansburg Cemetery, and the balance was paid the next day, when the hogs were all taken away. Benjamin Miller says he knew nothing about any mortgages thereon, nor of any judgment upon which levy could be made. This is probably unimportant as the mortgages were duly filed for record and as it is conceded that no levy was made by the Sheriff until after these hogs were sold and delivered.

The mortgage of the plaintiff below was executed the 4th day of June 1930 and it described 29 red shoats weighing from 40 to 125 pounds. The other hogs described in the mortgage of plaintiff are 9 red brood sows and 3 white brood sows.

Considering now the case of the plaintiff, which was the only case submitted by the lower court, were the 31 red hogs weighing from 220 to 225 pounds and sold by George W. Miller to Benjamin Miller on March 24, 1931, any portion of the 29 red shoats weighing from 40 to 125 pounds mortgaged by George W. Miller to plaintiff below on June 4, 1930? Before plaintiff can recover in this case, they must prove by a pre-

ponderance of the evidence, that the 31 red hogs sold as above were part of the 29 red shoats above referred to.

There is no testimony in the record reflecting upon this question except the testimony of Mr. Boitnott who testifies that after the death of his wife, and about ten days or two weeks before the hogs were sold, he went to see George W. Miller in reference to the indebtedness which Miller owed him and that Mr. Miller showed him 31 fat hogs weighing about 225 pounds each and some other live stock and that he wanted to sell all his property to him. If this has any bearing, it should show that the sale to Benjamin Miller was not unexpected. Mr. Boitnott admits that he and George W. Miller were not on friendly terms and later in his testimony (page 44 of the record) stated that he had not been on the place for about two years except when he took his wife there upon different occasions. He testified as follows: (Page 44 record).

"Q. You did not have any conversation with him in two years? A. Not particularly.

Q. How did you happen to talk about these hogs? A. Because I went there for a settlement, that is why.

Q. This conversation you complain about you say was after Mrs. Miller's death? A. Absolutely.

Q. The other times you would go there you would take your wife there and you wouldn't go in the house? A. Yes, I didn't go in.

Q. Drove in the lane and let her out and you would go back home? A. Yes."

The only testimony of Mr. Boitnott that could have any direct bearing upon the case is found on page 42, as follows:

"Q. The hogs you saw a week or ten days before they were sold were they the same hogs sold to Benjamin Miller? A. Yes, absolutely.

Q. You know that? A. Absolutely.

Q. How did George Miller get these hogs? A. He raised them.

Q. Do you know that to be a fact? A. Yes."

Notwithstanding the unfriendly relations between Mr. Boitnott and George W. Miller and the direct interest of Mr. Boitnott in this matter and offsetting this as against the statement of Benjamin Miller who is also interested, that shortly after this difficulty arose he inquired from George W. Miller as to where he had gotten these particular 31 hogs and was told that he had gotten them at the stock yards, we do not think the testimony of Mr. Boitnott when given full credit establishes the real question at issue in this case. His testimony does establish that the hogs that he saw on George W. Miller's place about ten days prior to the time they were sold to Benjamin Miller were the same hogs that George Miller sold to Benjamin Miller. That, however, is not the question for determination. The question for determination is, "Were these 31 hogs that were so sold part of the 29 shoats weighing from 40 to 125 pounds that were mortgaged to the plaintiff in June of 1930, some nine months prior thereto?" Mr. Boitnott says they were raised on the farm but he concedes that he had not been visiting the farm because of the unfriendly relations between himself and George W. Miller for a period of about two years prior to the period of ten days or two weeks before the hogs were purchased by Benjamin Miller and therefore could not be in a position to know that these 225 pound hogs were actually the pigs that were on that farm and were included in the mortgage of June 1930. The pleadings in this case containing the mortgages show that in addition to the 29 shoats plaintiff's mortgage covered 12 brood sows. The mortgage to the bank in addition to certain pigs contained 14 brood sows. In view of the absence of Mr. Boitnott from the farm of George Miller for the length of time he conceded, how could he know that these particular hogs were raised on the farm of George W. Miller or were on the farm June 4, 1930? We cannot escape the conclusion but that the verdict is not supported by the evidence and is against the manifest weight thereof.

On page 62 of the record counsel for plaintiff in error offered all the papers in case No. 28931, T. B. Boitnott v George Miller, being the case in which judgment was secured by Mr. Boitnott against George Miller and execution levied, etc. Counsel for plaintiff below admitted the record on the cognovit note, admitted the execution and levy showing the amount of his judgment and the levy on his chattel property but objected to anything further and the court sustained such objection.

Plaintiff in error was entitled to have the entire proceedings in case No. 28931 admitted. The jury were entitled to know the real transaction between these parties

as disclosed in the proceedings between Mr. Boitnott and George W. Miller and the refusal to permit the introduction of such entire proceeding, we think, was prejudicial. These papers were attached to the bill of exceptions for the purpose of enabling the court to rule on this objection. We find among such papers the return of the sheriff showing that he has in his hands for distribution $1349.86 to the parties entitled to receive the same. This sum of money was realized from the sale of the property of George Miller. It was realized from the sale of the property covered by the mortgages of plaintiff herein and the bank. George Miller was entitled to have this money distributed to the people to whom it was owing on his mortgage notes. He was entitled to have these obligations cancelled and the interest thereon stopped. In this proceeding the record also discloses that George Miller made a motion of date May 16, 1931, asking in brief that the money in the hands of the Sheriff be distributed (1) to the payment of the costs herein (2) to the payment of the mortgage of Proctor and Sturgeon (3) to the payment of the mortgage of the Farmers and Merchants Bank Company (4) to George A. Miller as administrator of the estate of Lola A. Miller ¼ of the proceeds arising from the sale of wheat and oats in the ground and the proceeds resulting from the sale of cow and calf therein named (5) that the remainder be paid to T. B. Boitnott, plaintiff herein, on his judgment in this case.

This record discloses that there was ample money to pay the claims of the plaintiff and the bank in full and leave money to be paid upon the judgment of Mr. Boitnott. A distribution should have been made. George Miller's property was sold and he was entitled to have the interest on his obligations stopped. Counsel for plaintiff in error, in their brief, suggest that plaintiff below and the bank objected to taking their money and that the trial court said he couldn't force them to take it. This is no part of the record and we therefore cannot consider the same. The record does clearly show, however, that both plaintiff below, and the bank, in May of 1931, upon the application of George W. Miller, could have had their claims paid in full and paid in full out of the property of George Miller which had been mortgaged to them.

For the reasons above stated, the judgment of the lower court will be reversed and cause remanded.